UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:13-cv-00046-MOC-DLH

| | | |
|---|---|---|
| **MARK KEVIN MILLER,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **WAL-MART,** | ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court on defendant's Motion for Summary Judgment (#67) filed December 22, 2014. Plaintiff is proceeding *pro se*. On December 29, 2014, plaintiff filed his initial Response (#70) to that motion. Inasmuch as he had not been first advised as to how to respond, the court entered an Order explaining plaintiff's burdens in responding to defendant's dispositive motion and allowing plaintiff additional time to further respond, all in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). *Roseboro* Order (#71). In accordance with such instructions, plaintiff timely filed a responsive Affidavit (#73), defendant then filed its Reply (#75), and plaintiff filed his Surreply (#76). Defendant has objected to the filing of the Surreply (#78) and plaintiff has filed a response to that objection. See Plaintiff's Opposition (#79). While the Local Civil Rules do not allow the filing of a surreply without first obtaining leave of court, the court has considered that filing over defendant's objection to provide plaintiff with the broadest opportunity to meet his summary judgment burden.

# FINDINGS AND CONCLUSIONS

## I.     Background

Plaintiff is a former employee of defendant who worked at defendant's distribution center in Shelby, North Carolina.  Initially hired in July 2005, plaintiff began work for defendant as a loader in the shipping area of the center.  In 2007, plaintiff was transferred to the position of unloader/processor in the distribution assembly department.  This job required plaintiff to unload tractor-trailers and process the unloaded merchandise.  While in this position, plaintiff, who is African-American, was supervised by three Caucasian supervisors. On July 1, 2012, plaintiff requested transfer to the staple-stock area as a power equipment driver and such request was granted.  Plaintiff was then supervised by Derrick Coffey, who was also Caucasian.

Defendant has presented evidence, which is not disputed, that at the time of his hire and throughout his employment, plaintiff was provided with information concerning defendant's workplace policies concerning ethics, performance tracking, discrimination and harassment prevention, and open communications.  Under these policies, an employee may be disciplined or terminated for any violation of company policy. Throughout his employment, plaintiff received satisfactory performance appraisals and positive recognition for his work.  Detracting from such positive appraisals of his actual work, however, plaintiff developed a history of counseling and discipline for being outside of his assigned work area without permission and socializing with other employees, which defendant's policies provided was a misuse of company time.  Further, such policies specifically provide for immediate discharge for gross misconduct and that dishonesty or compromised integrity amounts to gross misconduct.  Plaintiff admitted during discovery that his job duties required him to act with integrity.

In sum, defendant has presented uncontroverted evidence that, despite being proficient at his work, plaintiff would repeatedly violate company policy by leaving his assigned work area to socialize with other employees. Defendant considered this not just an abandonment of his own post, but a misuse of company time of both plaintiff and the other employee(s) with whom he would socialize. One month after receiving a written warning for similar conduct, the issue came to a head on July 16, 2012, when one of defendant's area managers, Billy Dover, who is Caucasian, again observed plaintiff socializing outside his assigned work area, an offense for which plaintiff had twice before received written discipline. Upon confronting plaintiff about such issue, plaintiff told Dover that he was not misusing company time because he was off-the-clock. Dover admonished plaintiff that if he was off-the-clock, he should not be in the work area and should not be interrupting employees who were still on the clock. After such encounter, Dover pulled plaintiff's time records and concluded that plaintiff was actually on-the-clock during the time period plaintiff stated he was off-the-clock. Dover reported his findings to defendant's Human Resources Manager, Bob Apple, who is also Caucasian, who opened an investigation.

In conducting such investigation, Apple reviewed statements from supervisors, time clock records, and recent written disciplinary actions for similar underlying issues concerning plaintiff socializing outside assigned work area. Based on such investigation, Apple concluded that Dover's finding that plaintiff's statement about being off-the-clock when he was actually on-the-clock was supported, showing a lack of integrity by plaintiff. He also concluded that plaintiff's motivation for being dishonest was avoidance of further discipline for misuse of company time.

Prior to taking any disciplinary action, however, Apple afforded plaintiff an opportunity to respond by providing his own written statement as to what occurred on July 16, 2012. While plaintiff did not therein admit to being dishonest, he admitted that he left his work area to have a personal discussion with a female employee, and that he went directly to the closest time clock in the DA area to clock-out immediately after speaking to Dover. In his July 28, 2012, response, plaintiff also made counter allegations in the response, contending that he believed the incident was a "black and white issue," that white associates were not disciplined for abusing company time, that Dover threatened him during the July 16 discussion, and that a fellow female employee had harassed him.

Apple commenced a separate, simultaneous investigation of plaintiff's counterclaims, collecting statements from the employees involved. He also considered plaintiff's allegations of disparate treatment by reviewing disciplinary records from other employees in the past 12 months for similar misconduct, misuse of company assets. Based on such investigation, Apple concluded that plaintiff's counterclaims were unsupported. He identified seven Caucasian employees who had been held accountable for misuse of company assets, including three Caucasian employees who had actually worked with plaintiff. Apple also determined that plaintiff's claims of threats from Dover and harassment by a female co-worker could not be substantiated. Apple concluded that none of the evidence obtained during the investigation of plaintiff's counterclaims provided reason to reverse the decision made in the parallel investigation to terminate plaintiff's employment.

With the concurrence of defendant's then assistant general manager at such facility, Dave Byrum (Caucasian), Apple terminated plaintiff's employment with defendant on August 4, 2012,

for "Gross Misconduct-Integrity." The reason given for termination on the exit interview form was that plaintiff had told a manager that "he was off the clock," and that the "[m]anager checked time log to identify that Mark was not off the clock when he was told."

## II. Plaintiff's Claims and Defendant's Motion

Based on such discipline and termination, plaintiff has asserted claims of: (1) race-based disparate discipline based on a disciplinary action dated June 11, 2012); (2) race-based discharge; and (3) retaliatory discharge.[1] Defendant has moved for summary judgment as to each claim, which will be reviewed *seriatim*.

## III. Summary Judgment Standard

Defendant has moved for summary judgment, contending that no genuine material issues of fact remain for trial and that it is entitled to judgment as a matter of law. Rule 56(a), Federal Rules of Civil Procedure, provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> (**1**) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

1   Plaintiff asserted other claims, which were dismissed by Judge Reidinger prior to the re-assignment of this case to the undersigned. Such determination amounts to law of the case.

> purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material

facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

**IV.     Discussion**

    **A. Disparate Discipline**

The court has first considered plaintiff's claim that he was unlawfully subjected to disparate discipline due to his race based on the June 11, 2012, disciplinary action that resulted in a written warning. To establish a *prima facie* case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, the plaintiff must show: (1) that he is a member of a class protected by Title VII, (2) that the prohibited conduct in which he engaged was

comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other, unprotected employees. Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993). If the plaintiff succeeds in proving his *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory reason for the difference in disciplinary enforcement. Id. If the employer articulates such non-discriminatory reason, the burden shifts back to the plaintiff to demonstrate that the employer's reasons are merely a pretext for discrimination. Id.

The facts underlying this claim are not disputed. On June 11, 2012, the conveyor line at the dock where plaintiff was unloading trucks and processing merchandise was down for several hours. Rather than discuss with his supervisor where he should work while the conveyor was being repaired, plaintiff left his assigned work area to socialize with another employee, despite having been verbally counseled by Dover the day before about being out of his assigned work area and socializing on-the-clock. As a result of such conduct, plaintiff's supervisors decided that plaintiff's pattern of misconduct warranted a written action for "misuse of company assets." In response, plaintiff told his managers that he did not believe that he was doing anything wrong and that he planned to work wherever he felt he was most productive.

First, to be actionable under Title VII, the purportedly disparate disciplinary action must amount to an adverse employment action. It is well-settled that "[m]ere criticisms of an employee's job performance -- written or oral -- that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." Dubnick v. Henderson County Hosp. Corp., 2009 U.S. Dist. LEXIS 75231, 21-22 (W.D.N.C. July 6, 2009) (citations omitted). Here, the discipline imposed was merely a written warning and had no impact on any material

term of plaintiff's employment. Indeed, plaintiff retained his rate of pay, all benefits, and was granted a transfer to another area less than a month later.

Second, plaintiff has not come forward with any evidence that the disciplinary measures enforced against him were more severe than those enforced against other similarly situated employees outside of his protected classification. Instead, plaintiff has relied exclusively on speculation and conjecture in his Response, Surreply, and Affidavit. Close review of all the evidence produced indicates that not only is there is no support for a claim of disparate discipline, the evidence is antithetical to such a claim as it shows that defendant disciplined white employees for similar misconduct in an identical manner and, at times, in a harsher manner for misuse of company time. As to the four comparator's plaintiff has pointed to, plaintiff admits that they worked in different areas and were supervised by different decision makers, which does not make them true comparators. Cepada v. Bd. of Educ. of Baltimore Cnty, 814 F. Supp. 2d 500, 513 (D. Md. 2011). At best, plaintiff believes he received disparate discipline; however, plaintiff cannot satisfy his burden of showing disparate discipline through mere speculation and conjecture. Hawkins v. Pepsico, Inc., 203 F.3d 274, 280 (4th Cir. 2000).

Finding that no genuine issue of material fact remains for trial, the court will grant summary judgment and dismiss this claim.

### B. Race-Based Discharge

Plaintiff next contends that he was not discharged because he lied, but because he is an African-American. As plaintiff has presented no direct evidence of racial discrimination, plaintiff must establish a prima facie case of discrimination under the burden-shifting analysis set out in McDonell Douglas Crop. v. Green, 411 U.S. 792, 802 (1973).

A *prima facie* case of wrongful termination requires the plaintiff to come forward with evidence upon which a reasonable jury could find that:

> (1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.

Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2005); see also Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007).

Here, plaintiff has not presented evidence that he was performing his job at a level which met his employer's legitimate expectations. While there is no question that plaintiff routinely received positive performance appraisals as to the performance of the technical aspects of his work, defendant has come forward with uncontroverted evidence that despite repeated admonitions both verbal and written, plaintiff simply refused to follow company policies concerning being absent from an assigned work area and socializing with other employees, which defendant's policies classify as misuse of company time. Such failure to comply with company policy is well documented over a number of years and culminated when defendant perceived that plaintiff lied in order to avoid further disciplinary action for another violation of the same policy.

As Title VII is not a general workplace-fairness law and this court does not sit as a "super-personnel department," DeJarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998), courts look to the perception of the decision makers rather than the employee to determine whether race or any other unlawful discriminatory factor played any role in the employment decision. "[I]t is the perception of the decision-maker which is relevant, not the self-assessment

of the plaintiff." Hawkins, 203 F.3d at 280. There is absolutely no evidence that any decision maker considered or was motivated by plaintiff's race in deciding to terminate his employment.[2]

The court has also considered whether there is evidence that could demonstrate circumstances that would create an inference of unlawful discrimination based on race. To make such a showing, it is plaintiff's burden to come forward with evidence that defendant retained a similarly-situated employee outside of his protected classification under similar circumstances. Hughes v. Bedsole, 48 F.3d 1376, 1383-85 (4th Cir. 1995); Carter v. Ball, 33 F.3d 450, 460-61 (4th Cir. 1994). The evidence produced is inapposite to such a finding as it reveals that Apple -- one of the two key decision makers in plaintiff's termination -- was directly involved in the terminations of two white employees who engaged in dishonesty and demonstrated a lack of integrity.

Finally, even if plaintiff had been able to make out a *prima facie* case, defendant has come forward with a legitimate, non-discriminatory reason for terminating plaintiff's employment, to wit, gross misconduct by misrepresenting to Dover that he was off-the-clock. In response, plaintiff has not come forward with any evidence that the proffered reason for termination was a mere pretext for racial discrimination. Independent review of the evidence of record reveals that, beyond plaintiff's own speculation and unsupported conclusions, no evidence of pretext or evidence upon which an inference of pretext could arise exists. Williams v. Cerberonics, Inc., 871 F.2d 452, 459 (4th Cir. 1989).

---

2    Plaintiff has also claimed that his supervisors were racially motivated because the female employee he would socialize with was white. Beyond plaintiff's speculation and conclusory allegations, he has come forward with absolutely no evidence that any decision maker was motivated, made any comments, or had any history of bias based on the interracial nature of plaintiff's socializing.

Finding that no genuine issue of material fact remains for trial, the court will grant summary judgment and dismiss this claim.

### C. Retaliatory Discharge

In his final claim, plaintiff contends that he was discharged for raising concerns as to race-based disparities in discipline in his July 28, 2012, written response to Human Resources, wherein plaintiff claimed, among other matters, that there was a "black-white issue."

To make a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in a protected activity; (2) his employer acted adversely against him; and (3) the protected activity was causally connected to the employer's adverse action. Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir.2004). The causal connection in the third-element of a Title VII retaliation claim is now the "but-for" cause provided in traditional tort law, not the "motivating factor" standard applicable to other Title VII claims. Univ. of Texas Sw. Med. Ctr. v. Nassar, ___ U.S.___, ___, 133 S. Ct. 2517, 2534 (2013). Under Nassar, plaintiff's burden is to come forward with evidence that "but for" engaging in protected activity, he would not have been terminated.

Plaintiff has not shown that "but for" raising the "black-white issue" or other issues touching on race in his July 28 Response he would have been retained by defendant. Indeed, the evidence of record indicates that defendant separated the issue of plaintiff's misconduct from the allegations of racial discrimination and conducted separate, simultaneous investigations. It appears that no action was taken against plaintiff for engaging in protected activity, that the protected activity resulted in an appropriate investigation of those claims, and that the conclusion of such investigation was simply that plaintiff's claims could not be substantiated.

While plaintiff has shown close-temporal proximity of the protected activity (July 28) to the complained-of disciplinary action (August 4), King v. Rumsfeld, 328 F.3d 145, 151 (4th Cir. 2003), which could well satisfy the *prima facie* requirement in certain circumstances, id., plaintiff's performance issues substantially predated his participation in protected activity. Further, the protected activity was not freestanding, but was made for the first time within plaintiff's own response to the charge of misconduct that ultimately led to his dismissal. "Title VII does not shield employees from 'normal sanctions for misconduct,' nor does it given them 'a stranglehold on a job' simply because they have engaged in some activity protected by the Act." Mann v. First Union Nat. Bank, 2005 U.S. Dist. LEXIS 42632 at *80 (W.D.N.C. Mar. 17, 2005), aff'd, 185 Fed.Appx. 242 (4th Cir. 2006). Injecting a claim of racial animus for the first time in the course of a disciplinary investigation does not provide plaintiff with immunity from the consequences of his own wrongful actions. Plaintiff has presented no evidence that would satisfy his burden of showing that his participation in protected activity was the "but-for" reason for his discharge.

Finding that no genuine issue of material fact remains for trial, the court will grant summary judgment and dismiss this claim.

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendant's Motion for Summary Judgment (#67) is **GRANTED**, and this action is **DISMISSED** with prejudice.

The Clerk of Court shall enter a Judgment consistent with this Order.

Signed: March 6, 2015

Max O. Cogburn Jr
United States District Judge